AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

## UNITED STATES DISTRICT COURT
### for the
#### Southern District of California

<table>
<tr><td>In the Matter of the Search of<br><i>(Briefly describe the property to be searched<br>or identify the person by name and address)</i><br><br>Blue T-Mobile Cellphone<br>Model: Wing tech Revvl 6x Pro<br>Seized as FP&F: 2024255200002201 Item 0003</td><td>)<br>)<br>)<br>)<br>)<br>)</td><td>Case No.   24-mj-08260-LR</td></tr>
</table>

**FILED**

Mar 27 2024

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY       s/ carolinalopez        DEPUTY

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-2, incorporated herein by reference.

located in the _____Southern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324 | Transportation of Illegal Aliens |

The application is based on these facts:

See Attached Affidavit of Border Patrol Agent Fernando Quiroz incorporated herein by reference.

- ☐ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Border Patrol Agent Fernando Quiroz
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _____telephone_____ *(specify reliable electronic means).*

Date: ___03/27/2024___

_____
*Judge's signature*

City and state: El Centro, California

HON. LUPE RODRIGUEZ JR., U.S. MAGISTRATE JUDGE
*Printed name and title*

## **ATTACHMENT A-2**
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-2:**       Blue T-Mobile Cellphone
              Model: Wing tech Revvl 6x Pro
              Seized as FP&F: 2024255200002201 Item 0003
              Seized from James Jr. BAILEY
              **(Target Device #2)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## **ATTACHMENT B**

## ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-3 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of March 5, 2024, up to and including March 19, 2024, and is limited to the following:

a.   tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b.   tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c.   tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d.   tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e.   tending to identify the user of, or persons with control over or access to, the Target Device;

f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.

**AFFIDAVIT**

I, Fernando Quiroz, United States Border Patrol Agent, having been duly sworn, depose and state as follows:

**INTRODUCTION**

1.     I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

**A-1:**          Blue Motorola Cellphone
                Model: XT2317-1
                IMEI: 351998773849195
                Seized from James Jr. BAILEY
                **(Target Device #1)**

**A-2:**          Blue T-Mobile Cellphone
                Model: Wing tech Revvl 6x Pro
                Seized as FP&F: 2024255200002201 Item 0003
                Seized from James Jr. BAILEY
                **(Target Device #2)**

**A-3:**          Black Coosea Bounce Cellphone
                Model: SL201D
                IMEI: 355581700252836
                Seized from Luis Fernando RODRIGUEZ-Lomeli
                **(Target Device #3)**

as further described in Attachments A-1 to A-3, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2.     The requested warrant relates to the investigation and prosecution of James Jr. BAILEY for transportation of illegal alien Luis Fernando RODRIGUEZ-Lomeli (RODRIGUEZ) (the "Material Witness") in violation of Title 8 U.S.C. § 1324 within the Southern District of California. The Target Devices were seized from BAILEY and the Material Witness on or about March 18, 2024, incident to the arrest of BAILEY and the Material Witness. The Target Devices are currently in the possession of the Department of

Homeland Security, El Centro Border Patrol Sector Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

3.    Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I, or others, have learned during the course of this investigation. The information contained in this Affidavit is based upon my personal observations and knowledge, my review of various official reports, and upon conversations with other Border Patrol Agents.  Dates and times are approximate.

## EXPERIENCE AND TRAINING

4.    I am a United States Border Patrol Agent with the Department of Homeland Security, Customs and Border Protection, United States Border Patrol ("USBP"). I have been employed as a full-time, sworn federal BPA with the USBP since June 4, 2007, and graduated from the USBP Basic Border Patrol Training Academy located in Artesia, New Mexico. The Border Patrol Academy curriculum covers specialized training in the Immigration and Naturalization Act (INA), training in Titles 8,18, 19, 21 and 31 of the United States Code, criminal law, and statutory authority.

5.    I am currently assigned to the El Centro Sector Prosecutions Unit. The El Centro Sector Prosecutions Unit is tasked with the responsibility of investigating and prosecuting alien smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor. In the course of my duties as a Border Patrol Agent, I investigate and prepare cases for prosecution against persons involved in the inducement of the illegal entry of undocumented aliens into the United States; the smuggling of undocumented aliens into the United States; and the transportation and harboring of undocumented aliens within the United States.

6.    Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of

California.  I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with uncharged co-conspirators and/or illegal aliens in order to further their criminal activities.  Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with uncharged co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

7.     The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens.  For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with uncharged co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors.  Illegal aliens also are typically in telephonic contact with uncharged co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing.

8.     Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text

messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

9.     This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

a.     tending to indicate efforts to smuggle aliens from Mexico into the United States;

b.     tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c.     tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d.     tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e.     tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

f.     tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**FACTS SUPPORTING PROBABLE CAUSE**

10.     On March 18, 2024, Border Patrol Agents - Intelligence assigned to the El Centro Sector Intelligence Anti-Smuggling Unit Group # 2 (ASU) were conducting surveillance in Calexico, California. Remote Video Surveillance System Operator (V1)

4

observed one individual climb up the United States/Mexico International Boundary Fence (IBF) from the Mexico side and scale down the IBF into the United States just east of Weed Road. Upon receiving the information from V1 that an individual had made an illegal entry into the United States in this area, ASU Agents strategically positioned their unmarked service vehicles along Highway 98 and began conducting static surveillance.

11.     At approximately 6:10 p.m., V1 informed ASU Agents that they observed the suspected illegal alien enter the All-American Canal, swim across the All-American Canal, and run north from the All-American Canal towards Anza Road and onto Highway 98. Once at Highway 98, V1 watched as the individual ran across Highway 98 and stood on the northside of Highway 98. While the individual remained on the north side of Highway 98, BPA-I L. Heipt, who was positioned near Ferrell Road and Highway 98, observed a tan Chrysler Town and Country (Van) bearing California license plates travel eastbound on Highway 98 towards the individual. Both V1 and ASU Agents watched as the Van slowed down, pulled over and came to a complete stop. Both V1 and ASU Agents observed the individual, later identified as Luis Fernando RODRIGUEZ-Lomeli (RODRIGUEZ) run to the Van, which had the sliding driver side door open, and enter the back seat of the Van.

12.     After RODRIGUEZ entered the Van, the Van continued travelling eastbound on Highway 98 with the sliding door still open. ASU Agents positioned their unmarked service vehicles behind the Van and kept constant visual as it travelled through Calexico, California. ASU Agents continued to monitor the Van as it continued northbound on Dogwood Road. As the Van continued north on Dogwood Road towards Dannenberg Drive, ASU Agents were not able to maintain visual on the Van due to heavy traffic. At this time, ASU Agents lost visual of the Van and began searching for the Van. ASU Agents began searching for the Van in the local motels and on various streets in the residential neighborhoods of El Centro.

13.     After approximately three hours, BPA-I A. Tapia observed the Van with matching license plates travelling eastbound on Euclid Avenue in El Centro. BPA-I A. Tapia relayed his observation to additional ASU Agents who were still searching the area.

5

ASU Agents kept constant visual on the Van as it continued throughout various streets in El Centro, California before it travelled to the Shell Gas Station in El Centro.

14.     While at the gas station, ASU Agents observed the driver, later identified as BAILEY, exit the Van, and walk inside of the gas station. After approximately five minutes, ASU Agents watched as BAILEY exited the gas station, entered the Van, and travelled to the Super 8 Motel in El Centro.

15.     As the Van entered the parking lot of the Super 8 Motel and parked, ASU Agents strategically parked their unmarked service vehicles in the parking lot and watched as BAILEY entered room 109. At this time, several Agents approached room 109 while BPA J. Avina utilized his flashlight to illuminate the inside of the Van and observed RODRIGUEZ attempting to conceal himself in the rear seat of the Van. BPA J. Avina notified ASU Agents of his observation, identified himself as a Border Patrol Agent to RODRIGUEZ and ordered RODRIGUEZ out of the Van. RODRIGUEZ admitted to being in the United States illegally. RODRIGUEZ also admitted he made the illegal entry by climbing the border fence in an area other than through a designated Port of Entry.

16.     While BPA J. Avina was questioning RODRIGUEZ as to his citizenship, ASU Agents knocked on the door of room 109 and announced themselves as BPAs. After knocking, the door was opened by BAILEY. ASU Agents questioned BAILEY regarding the Van and, as BAILEY was explaining that he did not know who the Van belonged to, the alarm of the Van began sounding. While the alarm was going off, BPA-I L. Heipt asked BAILEY where the keys to the Van were so he could turn the alarm off. BAILEY then stated that the keys were in his pocket. At this time, BAILEY was secured in handcuffs. BAILEY stated he was a United States Citizen but denied any involvement in alien smuggling.

17.     After BAILEY denied being involved in alien smuggling, RODRIGUEZ informed BPA-I A. Tapia that BAILEY took his cell phone. BPA-I L. Heipt then asked BAILEY where he put RODRIGUEZ's cell phone. BAILEY stated to ASU Agents that the cell phone was inside of the motel room and asked his wife, who was in the room, to

get his two cell phones as well as RODRIGUEZ's cell phone. After BAILEY's wife retrieved the three cell phones, ASU Agents placed BAILEY under arrest. BAILEY and RODRIGUEZ were transported to the Calexico Border Patrol Station for processing.

18.     At the Border Patrol Station, BAILEY was advised of his Miranda rights and elected to answer questions without the presence of an attorney. BAILEY stated he is an unemployed truck driver and currently lives in El Centro. BAILEY stated he has been arrested before for alien smuggling and was hired for today's job by an unknown smuggler. BAILEY said he received the van he used in today's smuggling event from the unknown smuggler in the trailer park near Von's in El Centro. BAILEY was promised $500 for today's alien smuggling job and sometimes he is paid $250 to scout the border area for Border Patrol Agents. BAILEY drove to Highway 98 and picked up the illegal alien he was arrested with. He then drove around for several hours, stopped at his house, then eventually went to the motel he was arrested. BAILEY stated that the illegal alien never got out of the vehicle the entire time.

19.     Material Witness RODRIGUEZ stated he is a citizen of Mexico. RODRIGUEZ stated he does not have the proper documents to enter or be legally in the United States. RODRIGUEZ stated he does not know how much he was going to be charged to be smuggled to Los Angeles because his brother made all the arrangements. RODRIGUEZ stated he used a rope to climb up the border fence and used the same rope to get lowered down the border fence into the United States. RODRIGUEZ stated he was guided via cellular phone and was told to continue north till he reached a road, and a gold-colored van was going to pick him up. RODRIGUEZ stated he waited for five minutes in the middle of the road and the van arrived to pick him up. RODRIGUEZ stated the driver opened the driver side sliding door and he got into the van.

20.     During a search incident to arrest of BAILEY and the Material Witness, three cellphones were found in the motel room: one blue Motorola cellphone (Target Device #1); one blue T-Mobile cellphone (Target Device #2); and one black Coosea Bounce cellphone (Target Device #3). Target Device #1 and Target Device #2 were claimed by BAILEY

and Target Device #3 was claimed by RODRIGUEZ. All cellphones were seized as: FP&F: 2024255200002201.

21.     I am aware that smuggling conspiracies require planning to successfully evade detection by law enforcement.  In my professional training and experience, this may require planning and coordination in the days and weeks prior to the event.  Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine their whereabouts.  Given this, I respectfully request permission to search the Target Devices for data beginning on March 5, 2024, up to and including March 19, 2024, the day after the arrest of BAILEY and the Material Witness.

## METHODOLOGY

22.     It is not possible to determine merely by knowing the cellular telephone's make, model and serial number, the nature, and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants, and have functions such as calendars and full address books, and can be minicomputers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network.  Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and, instead, store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored

that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

23.     Following the issuance of this warrant, a case agent familiar with the investigation will collect the Target Devices and subject them to analysis. All forensic analysis of the data contained within the telephones, and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

24.     Based on the foregoing, identifying, and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this Court.

/ /
/ /
/ /
/ /
/ /
/ /
/ /
/ /
/ /
/ /
/ /
/ /
/ /
/ /
/ /

**CONCLUSION**

25.    Based on all the facts and circumstances described above, I believe that probable cause exists to conclude that BAILEY and the Material Witness used the Target Devices to facilitate the offense of alien smuggling. The Target Devices likely were used to facilitate the offense by transmitting and storing data, specifically that described in Attachment B, which constitutes evidence of violations of Title 8, United States Code, Section 1324. I also believe that probable cause exists to believe that evidence of illegal activity committed by BAILEY, the Material Witness, and others continues to exist on the Target Devices. Therefore, I respectfully request that the Court issue this warrant.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Fernando Quiroz Border Patrol Agent
United States Border Patrol

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 27th day of March 2024.

3:06 p.m.

HON. LUPE RODRIGUEZ, JR.
UNITED STATES MAGISTRATE JUDGE

10

## ATTACHMENT A-1
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1:**              Blue Motorola Cellphone
                      Model: XT2317-1
                      IMEI: 351998773849195
                      Seized from James Jr. BAILEY
                      **(Target Device #1)**

 

The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-2
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-2:**       Blue T-Mobile Cellphone
             Model: Wing tech Revvl 6x Pro
             Seized as FP&F: 2024255200002201 Item 0003
             Seized from James Jr. BAILEY
             **(Target Device #2)**

 

The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-3
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-3**:                    Black Coosea Bounce Cellphone
                             Model: SL201D
                             IMEI: 355581700252836
                             Seized from Luis Fernando RODRIGUEZ-Lomeli
                             **(Target Device #3)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT B

ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-3 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of March 5, 2024, up to and including March 19, 2024, and is limited to the following:

    a.    tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

    b.    tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

    c.    tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

    d.    tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

    e.    tending to identify the user of, or persons with control over or access to, the Target Device;

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.